70508. EWING et al. v. JOHNSTON.
(334 SE2d 703)

BIRDSONG, Presiding Judge.

Plaintiff/appellant was a minor passenger in a pickup truck driven by Ronald Green, which collided with an automobile driven by the defendant Charles Johnston. Plaintiff, through his parents as next friend, brought this action for damages for injuries suffered in the collision. Plaintiff appeals from a jury verdict for the defendant. *Held*:

1. Plaintiff alleges the trial court erred in "failing to enter a de-

fault judgment as to liability" of the defendant. We do not agree. Defendant was served with the summons and complaint on June 25, 1983. The return of service was filed on July 6, 1983. Defendant's answer was filed on August 5, 1983 — 41 days after acknowledgment of service, but within 30 days from the date of filing of return. From a transcript of a motion to supplement the record in the instant case, it appears that counsel for the defendant and the trial court were under the impression that it was the date of filing of the return, and not the date of service, that started the running of the 30 days in which an answer must be filed. In addition, counsel for the defendant supplied records kept in the regular course of business in his office which showed that on August 5, 1983 he had been granted an extension of time to file the defendant's answer until the following "Monday," August 8, 1983, if he did not file an answer on August 5. Counsel for defendant also produced a copy of a letter, dated May 29, 1985, which confirmed a telephone call of May 28, 1985, with plaintiff's counsel that defendant had been given an extension of time to file his answer in a conversation on August 5, 1983. However, counsel for defendant was able to file an answer on August 5, which he and the trial court believed would be within the statutory time to file, and plaintiff's counsel was aware that he had verbally consented to the late filing of defendant's answer, as late as August 8, 1983. Accordingly, the issue of default was never raised prior to trial, during the trial, nor after the trial, until this appeal. Nor did plaintiff's counsel ever move for entry of default judgment. Hence, the record is devoid of any evidence of the payment of costs or requests to open default — either within the 15 days following default as a matter of right, or after the 15 days but prior to judgment, for providential cause of excusable neglect. OCGA § 9-11-55. A default cannot be opened following judgment. *Allstate Ins. Co. v. Travelers Ins. Co.*, 249 Ga. 504 (3) (291 SE2d 535).

Several issues are presented by this posture of the record at the time of trial on the issues: (a) When does the time begin to run in computing the 30-day period a defendant has to answer under OCGA § 9-11-12 (a)? (b) Was the extension of time granted counsel for defendant to answer effective? (c) Should the trial court have entered a default judgment?

(a) "A defendant shall serve *his answer within 30 days after* the *service* of the summons and complaint *upon him*, unless otherwise provided by statute." (Emphasis supplied.) OCGA § 9-11-12 (a). The code also provides that process shall be served personally by the sheriff (OCGA § 9-11-4 (c)), and one subsection provides "defendant shall have 30 days *after such service* in which to appear and answer. . . ." (Emphasis supplied.) OCGA § 9-11-4 (d) (1). The person serving process is required to make proof of service promptly, but "[f]ailure to

make proof of service shall not affect the validity of the service." OCGA § 9-11-4 (g). Hence, taking the statutes literally, the sheriff shall personally serve a defendant with process, and the defendant has 30 days "after such service" "upon him" to appear and answer. OCGA §§ 9-11-4 (d) (1), 9-11-12 (a). Time would appear to begin to run from date of actual service upon a defendant, and not from filing of the return. This conclusion is buttressed by the code which states that the failure to make return of service will not affect validity of the service, and if no return is made the service is valid and time cannot possibly be computed from the filing of the return because time would never start where the return is never filed — even after making personal service on a defendant. The critical issue has always been "the fact of service and not the nature of the return." *Harvey v. Harvey*, 147 Ga. App. 154 (1) (248 SE2d 214). We conclude that the 30 days within which a defendant has to file an answer begins to run from the date of service and not from the filing of the return.

(b) Because time ran from the actual date of service, default occurred on the 31st day following service. Thus, defendant was in default on August 5, 1983 when he orally requested and was granted an extension of time from plaintiff's counsel to file an answer. Our code is dispositive of this issue. A request for an extension of time governed by the CPA must be made before the expiration of the original period prescribed by the statute (OCGA § 9-11-6 (b)), and "by written stipulation of counsel filed in the action. . . ." Id. A private agreement between counsel extending time to file pleadings is not binding except when in compliance with this code section and it is filed with the court. *Minnesota Mut. Life Ins. Co. v. Love*, 120 Ga. App. 502 (171 SE2d 361). The filing of the answer by defendant within 15 days following the default in this case, without payment of costs, does not alone open the default. *Hazzard v. Phillips*, 249 Ga. 24, 25 (287 SE2d 191). Although both counsel and the trial court apparently were under the impression that defendant's answer was timely filed, this action was in default when the case was tried on the merits.

(c) Even though this action was in default, " '[o]ur law distinguishes between a default, which involves an interlocutory matter, and a default judgment, which represents final judicial action and the vesting of rights.' " *Lanier v. Foster*, 133 Ga. App. 149, 153 (210 SE2d 326); *Clements v. United Equity Corp.*, 125 Ga. App. 711, 712 (188 SE2d 923); see also *Foster Co. v. Livingston*, 127 Ga. App. 317, 321 (193 SE2d 626). Our research has failed to reveal a Georgia case with a sufficiently similar predicate to act as a precedent. However, in *Muscogee Realty Dev. Corp. v. Jefferson Co.*, 252 Ga. 400 (314 SE2d 199), where two of three defendants were in default for filing an answer on the 31st day following service, and the plaintiff apparently

did not notice the default, the case proceeded to trial and after both sides had made opening statements and the trial had commenced, the trial judge noticed that answers of two defendants had been filed late. The non-defaulting defendant was dismissed and the remaining two defendants were declared in default. The defaulting defendants paid costs on the following day and sought to open default but it was refused by the trial judge. In reversing the trial court's decision, the Supreme Court held that this was a "proper case" for opening default and the trial judge abused his discretion because "the plaintiff allowed the case to proceed to trial without moving that the defaulting defendants' answers be stricken and/or for a judgment on the pleadings because of the late filing of the answers . . . [and] it must be said that the plaintiff has not been prejudiced by the default and that the interests of truth and justice will be served by allowing these defendants to set up the defenses in their responsive pleadings." Id. p. 402.

Although federal civil procedure as to default judgments is not the same as the Georgia CPA, they are substantially similar and it is of assistance to us to see how they view a default without a default judgment being entered. Under the federal rules, an entry of default is made upon the docket when a defendant fails to answer within the statutory period. "The entry of a default is largely a formal matter and is in no sense a judgment by default. There is no res judicata effect [nor estoppel by judgment] until entry of the judgment by default." 6 Moore's Fed. Practice 55-17, § 55.03 [2]. Entry of default in the docket is only official recognition that a party has failed to comply with the rules and "is an interlocutory step . . . in anticipation of a final judgment by default." 10 Wright-Miller-Kane, Fed. Practice & Procedure 465, § 2692.

In the instant case, defendant answered within 15 days of default, but plaintiff neither moved for a default judgment, nor moved to strike the answer, or raised any issue of default before this appeal. No ruling of the trial court was ever obtained on this issue and under the Georgia CPA it is clear that the issue of default and the opening of default are to be decided by the trial court. OCGA § 9-11-55. Further, contrary to what plaintiff contends, our code does not require the trial judge, sua sponte, to enter default judgment where such issue is never raised. See OCGA § 9-11-55. Defendant could have opened default as a matter of right within 15 days of default by filing his defense and upon payment of costs, or at any time thereafter before judgment, within the discretion of the trial court, upon payment of costs for providential cause or excusable neglect when a proper case has been made. OCGA § 9-11-55. Accordingly, the defendant is at fault for failing to file his answer within the statutory period, or obtaining an extension of time in accordance with OCGA § 9-11-6 (b). The plaintiff is also at fault for failing to raise the issue of default,

which should be presented to the trial court (OCGA § 9-11-55), and permitting the case to proceed to trial on the merits. *Muscogee Realty Dev. Corp.*, supra.

The rule permitting opening of default is remedial in nature and should be liberally applied (*Schwab v. Bullock's*, 508 F2d 353 (1) (9th Cir. 1974)), for default judgment is a drastic sanction that should be invoked only in extreme situations. *Charlton L. Davis & Co. v. Fedder Data Center*, 556 F2d 308 (5th Cir. 1977); *Affanato v. Merrill Bros.*, 547 F2d 138, 140 (1st Cir. 1977). Whenever possible cases should be decided on their merits for default judgment is not favored in law. *United States v. Skalsky*, 71 FRD 564 (1); *Rasmussen v. W. E. Hutton & Co.*, 68 FRD 231; *Flaksa v. Little River Marine Constr. Co.*, 389 F2d 885, 887 (5th Cir. 1968), U. S. cert. den. 392 U. S. 928. Our courts have expressed a policy of liberality toward motions for relief from entry of default and have resolved doubts in favor of the party seeking relief so that the case can be heard on its merits. *Medunic v. Lederer*, 533 F2d 891, 894 (3rd Cir. 1976); *Tolson v. Hodge*, 411 F2d 123, 130 (4th Cir. 1969). Generally, a default should be set aside where the defendant acts with reasonable promptness and alleges a meritorious defense. *Consolidated Masonry &c. v. Wagman Constr. Corp.*, 383 F2d 249 (4th Cir. 1967). Here, the defendant filed within the 15-day period following default and his defense should be considered meritorious as it asserted several viable defenses in addition to the usual denial of plaintiff's allegations.

The statutory right to judgment following default is not an indefeasible right, but may or may not be asserted (*Buck v. Morrossis*, 250 P2d 270, 273 (114 Cal2d 461); *United Accounts v. Lantz*, 145 NW2d 488, 491 (ND 1966); *Gulf States Fin. Corp. v. Colbert*, 61 S2d 626, 629 (La. 1952); see generally 124 ALR 155, Annot. Waiver by Plaintiff of Right to Enter Default Judgment), and may be waived by a plaintiff by proceeding with the action without taking advantage of his right to judgment in a timely and proper manner. *Sheets v. Ragsdale*, 257 SE2d 858 (220 Va. 322); *Mack v. Augustine*, 416 P2d 436, 443 (3 Ariz. 542); *All Hans Credit Union v. Saucier*, 143 S2d 281, 283 (La. 1962); *Keister v. McDavid*, 76 A2d 776, 778 (DC 1950); *Goodemote v. McClain*, 337 NYS2d 79 (3) (40 AD2d 22); *Bailey v. Davis*, 55 SE2d 919 (2) (231 NC 86); *Whitehall Packing Co. v. Safeway Truck Lines*, 228 NW2d 365, 371 (68 Wis2d 369); *Oil Tool Exchange v. Schuh*, 153 P2d 976, 982 (67 CalApp2d 288); see generally 49 CJS 361, Judgments, § 363. Such waiver need not be expressed, but may be implied in law by conduct or circumstances inconsistent with the right to judgment. *Sheets*, supra; *Lanning v. Landgraf*, 143 NW2d 644, 647 (259 Io. 397); *Pollard & Haw v. American Stone Co.*, 68 SE 266, 267 (111 Va. 147); see generally 47 AmJur2d 190, Judgments, § 1161. Acts which have been held to constitute waiver include: allowing the de-

faulting party to plead (*Tristate Fair Assn. v. Lasell*, 215 NW 692 (2) (51 SD 527)), extending time to plead (*Voorman v. Spr. Court, San Francisco*, 86 P 694 (1) (149 Cal. 266)), joining issue upon the pleadings (*Buehner v. Sehlhorst*, 132 A 70, 73 (149 Md. 474)), going to trial on the merits (*Pollard*, supra), or announcing ready for trial and introducing evidence on the merits (*Yeast v. Fleck*, 121 P2d 426 (1) (58 Ariz. 469)). All of these indicia of waiver are present in the instant case.

We find, under the facts of this case, that plaintiff waived his right to default judgment, and the trial court did not err in failing to enter default judgment, sua sponte.

2. The first trial ended in a mistrial. In this retrial, the jury was struck and impaneled before plaintiff's counsel announced he had employed an expert and that he had so notified defendant's counsel earlier. Apparently, this employment occurred two days before trial. The court asked the parties to depose the witness overnight. The expert could not be located that evening and the following morning plaintiff insisted on calling his expert, and defendant moved for a continuance or a mistrial and argued that even though he could examine the expert he would need time to confer with or employ an expert for the defense to counter such evidence for the prosecution. A short recess was granted and counsel examined plaintiff's expert witness. Defendant's counsel contacted an expert as a possible witness but informed the court that his expert "does not have enough information to properly advise me in the trial of the case or to testify in rebuttal to the evidence presented" by plaintiff's expert. Defendant again moved for a continuance or a mistrial. The court advised plaintiff: "I don't think there is anything I can do but to grant a continuance or mistry it. [Plaintiff's Counsel]: Judge, I understand. THE COURT: I want to be fair to both sides and I don't know of any other way to do it. [Plaintiff's Counsel]: Well, then, for the record, the Court would either grant a continuance or a mistrial if we insist on using— THE COURT: Wait just a moment . . . what our notice in the paper says, to furnish the names and addresses of witnesses in the pre-trial. . . . If you want to use him, we will have to try it at some later date. [Plaintiff's Counsel]: We will not use him, but we will proceed with the trial. But we insist we do have that right to use him."

Addressing the error alleged in the enumeration — "excluding the testimony" of the witness, we find that the testimony of the plaintiff's witness was not excluded. Counsel was permitted to call the witness but only after a continuance or a mistrial. He elected to continue the trial without his witness. Counsel acceded to the court's ruling while continuing to insist he was right. This court has held that "[n]o matter how erroneous the ruling might have been (and we express no opinion on this question), a litigant cannot submit to a ruling, acqui-

esce in the ruling, and still complain of same. He is required to stand his ground and fight in order to successfully enumerate as error an erroneous ruling by the trial judge. Acquiescence completely deprives him of the right to complain further; he has agreed that the trial court's ruling was correct by submitting to it." *Upshaw v. Cooper*, 127 Ga. App. 690, 692 (194 SE2d 618); accord *J&F Car Care Svc. v. Russell Corp.*, 166 Ga. App. 888 (305 SE2d 504); *Marlow v. Lanier*, 157 Ga. App. 184, 185 (276 SE2d 867).

3. Plaintiff complains of the trial court's ruling permitting a lay witness to give his opinion as to speed of the vehicle in which the plaintiff was riding. Our code provides that where the question is to be decided by a jury "any witness may swear to his opinion or belief, giving his reasons therefor." OCGA § 24-9-65. Further, "[i]t has long been the rule in this State that where the relevancy or competency of evidence is doubtful, it should be admitted and its weight left to the determination of the jury." *Lovejoy v. Tidwell*, 212 Ga. 750, 751 (95 SE2d 784). Accord Agnor's Ga. Evid. 165, § 10-2; Green, Ga. Law of Evid. 104, § 61.

A layman's opinion of speed is admissible when he has testified to the facts upon which the opinion is based. Agnor's Ga. Evid. 159, § 9-14. " 'The speed at which an automobile is being operated may, like any other fact, be established by circumstantial evidence. The fact that an automobile, which ran off a bridge, broke through and tore down upright timbers . . . [and] the effect which the automobile had upon these timbers and the location of the automobile after it fell off the bridge are circumstances which would indicate the speed at which the automobile was traveling when it hit the upright timbers and ran off the bridge.' " *Shockey v. Baker*, 212 Ga. 106, 110 (90 SE2d 654). " 'The value of the opinion given in the [witness'] testimony as to the speed of the [vehicle] which struck [him], based upon the facts [he] stated, *or the sufficiency or insufficiency of these facts to authorize the opinion given by the witness* was a matter to be determined by the jury. . . .' " *Ellison v. Evans*, 85 Ga. App. 292, 297 (69 SE2d 94). Evidence of the force of impact of collision of a car, or the distance the auto traveled from the point of impact may of itself, in connection with other circumstances, be sufficient to warrant a finding of a jury of negligence as to speed. *Shockey*, supra, p. 110.

In *Hill v. Kirk*, 78 Ga. App. 310 (50 SE2d 785), this court found admissible testimony of a witness of "how fast the car which the defendant was driving was coming" when "the only thing he saw was the headlights approaching, and he heard the noise, but *did know* that it was going well over 35 miles per hour." (Emphasis supplied.) This court also found that a "witness may, from hearing the noise which the automobile made while in motion and from hearing the impact when it collided with the poles and from observing its condition

after it had been wrecked, form an estimate of the speed at which the automobile was traveling, although the witness did not see the automobile." *Engle v. Finch,* 37 Ga. App. 389 (4) (140 SE 632).

In the instant case, this collision occurred in the northbound lane of Highway 124 in Snellville, Georgia. James Edison, a passenger in defendant's car, was traveling southbound on Highway 124 and giving directions to the driver, Charles Johnston. Johnston was 18 years of age and had his driver's license for only three months. They were driving a 1964 Buick. Johnston started to turn left into the driveway of a house but Edison told him it was the next house. Johnston had the left turn signal on and continued down the highway for approximately 55 feet at a speed of 5 miles per hour and then turned left across the northbound lane to enter the driveway of the house.

Ronald Green was employed by Lamar Ewing at his garage and was sent on an errand in a pickup truck to pick up some parts. Nicky Ewing, the plaintiff, asked to go with him. They were traveling north on Highway 124 and approached the crest of a hill. The crest of the hill was approximately 200 feet from the point of the collision. Green estimated his speed at 45 miles per hour, the legal speed limit. As he topped the crest of the hill, Green saw defendant's automobile with the turn indicator on. He said he was only 75 feet from defendant's car when it suddenly turned across the road in front of him. He applied his brakes and skidded 51 feet and 11 inches to the point of collision. The Buick was knocked 11 feet from the point of impact.

Edison was permitted to testify that he did not see the defendant's truck before they started the turn across the northbound lane and then heard tires squealing and "barely had time to look up to see what was happening. . . . I didn't even see him until he hit the . . . car. . . . By the time I raised up, he hit the side of the car." Edison would not estimate how fast the car was being driven, but was "well satisfied that he was doing well over the speed limit, well over." Plaintiff objected to this testimony. Edison gave the basis for his observation that his car "was a big old '64 Buick. That old Buick was a heavy car . . . and it knocked that left back wheel ["off the shoulder of the road. . . ."] He had to be moving at a terrific speed in order to do that. A '64 Buick is a heavy car."

We find that the trial court did not err in permitting this witness to testify to his opinion when he included the reason therefor. A lay witness is permitted to testify as to his opinion of speed. He gave the basis for his opinion and the sufficiency and weight were for the jury. *Ellison,* supra; *Shockey,* supra; *Hill,* supra; see also *Ferrell v. State,* 149 Ga. App. 405 (4) (254 SE2d 404), U. S. cert. den. 444 U. S. 1021; *Gibbs v. Gianaris,* 137 Ga. App. 18 (2) (223 SE2d 4).

4. Under the facts and law, as stated above, we find no error in the trial court's failure to grant plaintiff's motions for directed ver-

dict, judgment notwithstanding the verdict, and for a new trial.
*Judgment affirmed. Carley and Sognier, JJ., concur.*

DECIDED SEPTEMBER 4, 1985.

*Joseph E. Cheeley, Jr., Joseph E. Cheeley III*, for appellants.
*Gregory T. Presmanes*, for appellee.