Allen DEMOSKI and Evelyn
Demoski, Appellants,

v.

Ralph E. NEW and Velma J.
New, Appellees.

Ralph E. NEW and Velma J.
New, Appellants,

v.

EARL E. COOK REAL
ESTATE, Appellee.

Nos. S–1189, S–1190.

Supreme Court of Alaska.

May 22, 1987.

Lyle R. Carlson and Terrence H. Thorgaard, Fairbanks, for appellants Demoski.

Gary W. Vancil, Fairbanks, for appellees New.

Donald F. Logan, College, for appellants New.

Albert G. Parrish and James A. Parrish, Fairbanks, for appellee Earl E. Cook Real Estate.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Justice.

Ralph and Velma New brought suit against Douglas and Jean Everhart and

Allen and Evelyn Demoski seeking, among other things, a declaration that a road called Tribulation Trail, which leads from a public highway across the property of the Everharts, the Demoskis and the News, is a public road. The News also sought to recover damages from John Teas and Earl E. Cook Real Estate for misrepresenting the road to be public when it was not. The court granted summary judgment in favor of Cook because the statute of limitations had run with respect to claims made against it. Following a court trial, the court entered a final judgment against the Everharts and Demoskis, declaring Tribulation Trail to be a public road. The Demoskis have appealed from this declaration. The News have cross-appealed from certain rulings relating to their claims against the Demoskis and from the grant of summary judgment in favor of Cook.

We have decided one other case involving Tribulation Trail, *Laughlin v. Everhart*, 678 P.2d 926 (Alaska 1984). For convenience we reproduce the map set forth in that opinion.

## I. APPEAL—DEMOSKI v. NEW

The facts found by the trial court are as follows. What is referred to as the Teas' homestead was public land first entered in 1952 by Ray Skelton, who put in Tribulation Trail beginning in 1953. An alternative access to the property was built by Skelton after 1958, the so-called Lower Road. In 1959 Skelton relinquished his right of entry to Teas. Teas improved Tribulation Trail and used it daily to reach his homestead. Although Teas also used the Lower Road, Tribulation Trail was his principal means of obtaining access to the property. Teas allowed anyone to use Tribulation Trail.

Teas acquired patent to his homestead in 1968. In 1971 he conveyed the eastern half to Skelton and, at about the same time, conveyed the northwest forty acres in ten acre parcels to the Demoskis, Everharts, Schoen, and Presnell. Teas reserved a right of access for himself through the Lower Road in the deed to Skelton. None of the other deeds mentioned access. In 1975 Teas sold five acres including his homesite to Quist and his remaining thirty-five acres to the News.

In September of 1978, Quist was blocked from using Tribulation Trail by the Demoskis and Everharts, who claimed that the road was private. The court found that the Lower Road had not been maintained since 1971 and was virtually useless as an access route for nine months of the year.

Although not noted by the court, it is uncontested that Teas failed to obtain approval from the Fairbanks North Star Borough for the various subdivisions of his homestead. Likewise, the Demoskis and Everharts have divided each of their ten acre parcels into four two and one-half acre parcels without approval of the Borough.

The court concluded that "under the authority of *Freightways Terminal Co. v. Industrial Indemnity Co.*, 381 P.2d 977 (Alaska 1963), clearly the [News] have an easement by implication which would allow them or their successors to use Tribulation Trail as access to their property, and further that that easement is appurtenant to and runs with the retained lands of the grantor so that successive owners of the retained portion would have the right to use the easement." Observing that the fact that the News had an easement by implication did not necessarily mean that the road was public, the court went on to find that it was in fact a public road for the reasons which follow:

1. It was the intention of the original owners of the road, Skelton and Teas, that the road be open to the public.

2. Tribulation Trail was the only access to the property in question prior to 1958, and the only viable access to the property since then.

3. None of the defendants ever inquired as to the status of Tribulation Trail at any time since purchase.

4. The defendants never overtly asserted exclusive use of the road until 1978.

5. Quist, who was introduced to Teas by defendant, was never told of defendant's assertion to exclusive use of the road.

6. All the parties to the lawsuit have maintained or contributed to the maintenance of Tribulation Trail.

7. That portion of the road over the Bullwinkle-Salisbury property is dedicated to public access.

8. Tribulation Trail has been used by property owners, sightseers, visitors and contractors uninterruptedly since it was first established.

9. The defendants Demoski and Everhart have recognized the public nature of the road by claiming rights to use that portion of Tribulation Trail which passes through the New property, even though they have absolutely no legal right to do so.

### A. *The News hold a private easement by implication.*

The Demoskis' first substantive argument is that the trial court erred in finding that the News have an easement by implication along Tribulation Trail. An easement by implication arises where there is (1) a quasi-easement at the time of con-

tract of sale or conveyance, (2) which is apparent, (3) reasonably necessary for the enjoyment of the land retained or the land conveyed, and (4) continuous in nature. *Freightways Terminal Co.,* 381 P.2d at 983; W. Burby, *Real Property* § 28, at 72–75 (3d ed. 1965). Even if these elements exist, an easement by implication will not be found where the parties intend that such an easement not exist. *Id.* at 75.

The Demoskis' attack the court's conclusion that an easement by implication exists, based on the alleged absence of reasonable necessity and the existence of a contrary intent of the parties. They argue that the reasonable necessity requirement has not been met because the Lower Road provides servicable, even preferable, access to the remainder of the Teas' homestead. The Demoskis also claim that the parties' intent negates creation of a private easement. They rely on the testimony of Allen Demoski and Douglas Everhart to support both points. When the two met with Teas he allegedly told them that the access to their property would be over the Lower Road. Although he mentioned Tribulation Trail, he allegedly observed that neighbors were feuding over the public or private nature of what is now the public highway, Rosie Creek Road, into which Tribulation Trail runs, and that "we might even get shot at if we went over there." Everhart also testified that Tribulation Trail was closed by snow and was not in use when they visited with Teas for the purpose of buying the property. At that time they gained access by means of the Lower Road.

■ The Demoskis' allegations require a review of the trial court's findings of fact. The standard of review of factual determinations made by the trial court is expressed in Alaska Civil Rule 52(a): "findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses." We will not declare a trial court's finding to be clearly erroneous unless, after a review of the entire record, we are left with a definite and firm conviction that a mistake has been made. *State v. Phillips,* 470 P.2d

266, 268 (Alaska 1970). Furthermore, we will generally accept the determination of witnesses' credibility that are made by the court as a trier of fact, since the court heard and observed the witnesses first hand. *Curry v. Tucker,* 616 P.2d 8, 12 n. 3 (Alaska 1980).

■ We are not convinced that the trial court's findings of fact are clearly erroneous in this case. The testimony of Teas and Skelton as to the relative usage and utility of Tribulation Trail and Lower Road was in conflict with the testimony of Everhart and Demoski. Skelton testified that both roads were impassable at times. Tribulation Trail washed out in the spring when the snow melted, and Lower Road became submerged under water. Skelton used whichever road was open at any given time. Teas corroborated Skelton's testimony, and added that Tribulation Trail was the better means of reaching his property during the year as a whole. The court decided to believe Teas and Skelton when determining whether access over Tribulation Trail was reasonably necessary to enjoy Teas' property.

As to the pre-sale conversation between Teas, and Demoski and Everhart, Teas testified that he came away from the meeting with the understanding that there "wouldn't be any problem with the road" and that it would "stay." This evidence is consistent with the intent to create an easement by implication over Tribulation Trail. On this point too the trial court evidently credited the testimony of Teas.

The court did not clearly err in making these credibility choices. We affirm the trial court's decision to recognize an implied private easement running from the north boundary of Teas' original homestead, across Tribulation Trail, to the property that Teas sold to the News.

### B. *Tribulation Trail is not a public road.*

Appellants' primary substantive point on appeal is that the court erred in finding that Tribulation Trail, as it crosses appellants' land, is a public road. They observe that while the decision of the court contains no clear theory which explains its conclu-

sion, it appears to be relying on a public dedication theory.

### 1. *Public dedication.*

We explained public dedication in *Hamerly v. Denton*, 359 P.2d 121, 125 (Alaska 1961):

> There is a dedication when the owner of an interest in land transfers to the public a privilege of use of such interest for a public purpose. It is a question of fact whether there has been a dedication. This fact will not be presumed against the owner of the land; the burden rests on the party relying on a dedication to establish it by proof that is clear and unequivocal.

(Footnotes omitted).

■ Our review of the record convinces us that there was no act of public dedication by Teas or Skelton. There is no evidence that they ever communicated an intent to dedicate Tribulation Trail to public use before the land was sold in 1971. Although they did not object to casual use by sightseers and hunters, such a low level of use cannot support a finding of public dedication.[1]

Our discussion in *Hamerly*, 359 P.2d at 125, applies equally to the present case:

> It is true that the road was used during the tenures of [the homesteaders] ... But *the road was initially established by these homesteaders for their own use. It had no other substantial use except when occasion made it convenient for persons to visit [the homesteaders] either socially or for business purposes or simply out of curiosity. It cannot be implied from this that either [of the homesteaders] intended to dedicate the road for public use.* Nor can such intent be presumed from the fact that the homestead claimants apparently did not attempt to stop sightseers and hunters from occasionally using the road.

Dedication is not an act or omission to assert a right; mere absence of objection is not sufficient. Passive permission by a landowner is not in itself evidence of intent to dedicate. Intention must be clearly and unequivocally manifested by acts that are decisive in character.

(Footnotes omitted, emphasis added). *See also Swift v. Kniffen*, 706 P.2d 296, 301 (Alaska 1985).

This case is distinguishable from *Olsen v. McRae*, 389 P.2d 576 (Alaska 1964), where an adequate evidentiary basis for a finding of public dedication was presented to the court. In *Olsen* a homesteader constructed a road for the purpose of creating access to areas beyond his homestead. By contrast, Tribulation Trail was constructed by Skelton, and then Teas, for the purpose of reaching the homestead and not property beyond it.

In sum, the road leading to one's home does not become public merely because one fails to stop an occasional sightseer from using it. More affirmative acts by a property owner are required to dedicate a private road to public use.

### 2. *Public easement by necessity.*

The News also argue that the judgment is sustainable on the following theory. The implied easement which Teas retained when he conveyed part of his land to the Demoskis and the three others was an easement which was reasonably necessary for the beneficial enjoyment of the remaining property that he owned. The only easement fitting that description, according to the News, would be a public easement since the beneficial use of the remaining property required further subdivision. Such a subdivision could not occur under applicable Borough ordinances unless Tribulation Trail was public.[2] Therefore the implied easement was public.

---

1. For example, Teas was asked:

   During this period of time, 70–71, before the public didn't use Tribulation Trail, the only—basically the only people that used it was people that come out to see you. Is that right?

   Answer: That would be for the most part yes.

   Question: And that's what you said in your deposition?

   Answer: Probably, I don't remember exact statement on that.

2. Fairbanks North Star Borough Code of Ordinances 17.04.030B provides that "[a]ll lands within the borough which are to be divided shall be shown on a plat and approved by the

Even though this was not a theory relied on by the trial court, the News are procedurally correct that it may be raised. An appellee may seek to defend a judgment on any basis established by the record, whether or not it was relied on by the trial court or even raised before the trial court. *Ransom v. Haner,* 362 P.2d 282, 285 (Alaska 1961). However, we reject this theory on the merits for two reasons. First, the News did not establish that the beneficial enjoyment of the remaining property would entail subdividing it further. Teas told Demoski and Everhart that he did not anticipate further subdividing of his property. Second, assuming that subdivision was required for beneficial enjoyment, Borough officials testified that subdivisions were occasionally approved during 1971 and 1972 where there was legal access but no roadway was actually built. Here, there was legal access to the Teas' homestead along the section line which forms the east boundary of Teas' property, so the subdivision might well have been accomplished without declaring Tribulation Trail to be a public road. Therefore, we conclude that Tribulation Trail is an implied easement but not a public road.[3]

## II. CROSS–APPEAL—NEW v. DEMOSKI

### A. *Assigned Claims of Teas*

The News' complaint contained a claim for relief against Teas for allegedly misrepresenting that Tribulation Trail was a public road. Teas filed a cross-claim against the Demoskis seeking to recover the attorney's fees and costs that the Demoskis' conduct had forced him to expend in defense of News' claim. The Demoskis never answered Teas' claim and Teas never requested an entry of default. This situation persisted until the middle of trial, when Teas assigned his cross-claim to the

News and they moved for a default in open court. Default was granted. Subsequently, however, the court denied a request to award Teas' fees and costs. Thus the court has declined to enter a judgment against the Demoskis on the default. The News have taken a cross-appeal from this refusal. We conclude that the court erred in entering default.

We have approved of the following standard of conduct:

> When [a lawyer] knows the identity of a lawyer representing an opposing party, he should not take advantage of the lawyer by causing any default or dismissal to be entered without first inquiring about the opposing lawyer's intention to proceed.

American College of Trial Lawyers Code of Trial Conduct, No. 14A, at 149 (1971–72), *quoted in Hertz v. Berzanske,* 704 P.2d 767, 772 (Alaska 1985); *City of Valdez v. Salomon,* 637 P.2d 298, 299 (Alaska 1981); and *Cook v. Aurora Motors, Inc.,* 503 P.2d 1046, 1049 n. 6 (Alaska 1972). Counsel for the News did not observe this standard before moving for a default. The court compounded the error by declining the request of counsel for the Demoskis for a brief period of time in which the Demoskis could file an answer and cure the default.

Further, Teas had waived his right to request a default by failing to request one before evidence was introduced. Most courts which have considered the question as to when a default must be sought conclude that it must be sought within a reasonable period after the default occurs. *See* 47 Am.Jur.2d *Judgments* § 1161, at 191 (2d ed. 1969); 49 C.J.S. *Judgments* § 203, at 361–62 (1947). When an answer has never been filed, the plaintiff cannot wait to move for default until after trial has commenced,[4] a jury has been se-

---

Fairbanks North Star Borough planning commission...." 17.16.040A provides that "[p]rior to approval of the final plat, the subdivider shall satisfy the commission regarding completion of, or satisfactory arrangements for the completion of ... an access road or roads to serve all lots in the subdivision." Alaska Statute 40.15.030 provides that borough approval of a subdivision

plan is deemed to dedicate all platted streets to public use.

3. The Demoskis raise various procedural arguments which we have reviewed and find to be without merit.

4. *Sheets v. Ragsdale,* 220 Va. 322, 257 S.E.2d 858, 859–60 (1979) (answer untimely filed;

lected,[5] or evidence has been introduced on the merits.[6] We hold that waiver occurs at least when evidence is presented at trial without a default first being requested. The News are bound by Teas' waiver because they are Teas' assignees.

In addition, the News claim that the court erred in refusing to grant "contribution" in favor of Teas. Their motion for contribution was dependent on a valid entry of default on Teas' cross-claim. Since we have concluded that the court erred in entering default, this point need not be discussed further.

### B. *Attorney's Fees and Costs*

The trial court awarded attorney's fees of $4,500 in favor of the News against the Demoskis and Everharts, and it denied costs. Both of these decisions are assigned as error by the News.

The News sought attorney's fees of approximately $59,135. The court found that one of the attorneys for the News had impermissibly overcharged them, that the billings were duplicative, that a substantial amount of the services performed related to the News' claim against Cook, and that counsel for the News generated much unnecessary work by making vituperative attacks on opposing counsel and parties and by failing to follow the civil rules and the provisions of the pre-trial order. The court concluded that the sum awarded pursuant to Alaska Civil Rule 82 was a reasonable partial fee.

▮▮▮ Our review of the record indicates that it contains support for each of the court's findings, and we therefore conclude that the court did not abuse its discretion in making the award of attorney's fees. However, on remand, the court is authorized to consider whether the News are still the prevailing parties in view of our disposition herein.[7] If they are not, they would not be entitled to any attorney's fees.

With respect to costs, we have found no explanation in the record for the court's refusal to award allowable costs under Alaska Civil Rule 79. On remand, such an award should be made unless the court determines that the News are not the prevailing parties.

### III. CROSS–APPEAL—NEW v. EARL E. COOK REAL ESTATE

The News' complaint contained claims for relief against Earl E. Cook Real Estate which allege that Cook had, as agent for Teas, sold the land to the News under the misrepresentation that it had public access suitable for subdivision. The trial court granted summary judgment in favor of Cook on these claims on the grounds that the statute of limitations had expired before the action was brought. The News appeal this ruling.

In addition, the court awarded costs and attorney's fees against the News in favor of Cook and entered an order which contained a certificate pursuant to Alaska Civil Rule 54(b), making this judgment final and appealable. After some procedural maneuvering, Cook collected this judgment and moved for costs and attorney's fees incurred in aid of execution. Cook claimed full attorney's fees expended in this effort, $3,615. This amount was awarded. The News challenge this award on the grounds that (1) the documentation underlying the motion indicates that some of Cook's attorney's time was spent in unsuccessfully attempting to obtain dismissal of the News'

---

plaintiff did not move for default judgment until the first day of trial; entry of default is reversed).

**5.** *Dodson v. Citizens State Bank,* 701 S.W.2d 89, 94 (Tex.App.1986) (incomplete answer filed; plaintiff did not move for default until after a jury was selected).

**6.** *Ewing v. Johnston,* 175 Ga.App. 760, 334 S.E.2d 703, 707 (1985) (plaintiff did not object to untimely answer until trial was completed).

**7.** Although the Demoskis never conceded that Tribulation Trail was a private easement running in favor of the News, that issue may be viewed by the trial court to be merely an intermediate step in the process of declaring the road public. The prevailing party is the party who prevails on the main issues in the case. *Cooper v. Carlson,* 511 P.2d 1305, 1308 (Alaska 1973). The determination of which party is the prevailing party is committed to the discretion of the trial court. *Owen Jones & Sons, Inc. v. C.R. Lewis, Co.,* 497 P.2d 312, 314 (Alaska 1972).

appeal and in settlement negotiations and (2) that full fees should not be awarded in any event.

With respect to the grant of summary judgment on statute of limitations grounds, we affirm. The applicable statute of limitations is AS 09.10.070, which prescribes a bar of two years from the time the cause of action accrues. A cause of action accrues when a party knows or should know that he has a claim. *Sharrow v. Archer*, 658 P.2d 1331, 1335 (Alaska 1983). The News filed their claim on November 8, 1982. The News knew or should have known that they had a claim against Cook more than two years before this.

On October 9, 1978, the News delivered a letter to Cook which stated in part: "I am planning on building on my property and would like to have the question of public access on Tribulation Trail settled." Ralph New was asked at his deposition why he prepared the letter. He replied that he realized that he had a problem of access, that he discussed it with Mike Harter, an associate broker for Cook, who suggested that New obtain counsel to resolve his problem. New did consult with counsel who, on August 8, 1979, wrote a letter to Mssrs. Everhart and Demoski. The letter refers to "certain events occurring last summer by which Tribulation Trail was closed by yourselves so as to deny Mr. New access to his property." New also stated in an affidavit that in October of 1979 "I went over to the Borough platting office and the platting officer told me that I could proceed no further with my platting until there was recorded reservation or dedication of public access...." Based on these facts, reasonable minds could not differ but that the News either knew or should have known of their claim for misrepresentation by October of 1979. Their claim filed on November 8, 1982 was thus barred by the two-year limitations period.

The News' points concerning the award to Cook of attorney's fees incurred in aid of execution are correct. Some of the time claimed by Cook's counsel relates to Cook's unsuccessful motion to dismiss this appeal and to settlement negotiations.

Cook attempts to justify the award by noting that two days after the award at a sanctions hearing against one of News' attorneys, the court found that grounds for sanctions existed but did not impose a fine against News' counsel. The court stated, "I think that the award of costs and attorney's fees which the court has done adequately takes care of any matter of sanctions." Cook argues from 'this that the trial court intended the award to be a sanction against the News' counsel and that it can be upheld on this basis. One difficulty with this position is that if sanctions were warranted, they were assessable personally against counsel under the circumstances of this case, whereas the award of costs and attorney's fees were assessed against the News. Moreover, it is not clear on this record what the amount of attorney's fees awarded to Cook properly should be. Thus, we cannot determine whether the difference between that amount and the amount awarded is too harsh a sanction. We thus reject Cook's position on this issue.

The News also argue that full attorney's fees incurred in aid of execution may not be awarded. On this point too, the News are correct. The purpose of Civil Rule 82 is to compensate a prevailing party partially, not fully, for attorney's fees incurred in litigation. *Stepanov v. Gavrilovich*, 594 P.2d 30, 37 (Alaska 1979). An award of full attorney's fees is "manifestly unreasonable" in the absence of bad faith or vexatious conduct by the losing party. *State v. University of Alaska*, 624 P.2d 807, 817 (Alaska 1981). No such finding was made in this case.

Thus, on both grounds presented, the award of $3,615 in additional attorney's fees must be reversed and appropriate fees should be assessed on remand. The court is also authorized to reconsider the question of sanctions against counsel for the News.

For the above reasons we issue the following order:

1. The court's declaration that Tribulation Trail is an implied easement for the benefit of the property formerly owned by Teas is AFFIRMED;

2. The declaration that Tribulation Trail is a public easement is REVERSED;

3. The order of the court refusing to enter a judgment on the cross-claim of Teas is AFFIRMED:

4. The award of attorney's fees of $4,500 in favor of the News is VACATED so that the court may consider whether the News are the prevailing parties in their claims against the Demoskis;

5. The order of the court refusing to award costs in favor of the News is VACATED and the court is instructed to award costs to the News on their claim against the Demoskis unless the court concludes that the News were not the prevailing parties;

6. The court's grant of summary judgment in favor of Cook is AFFIRMED;

7. The court's award of additional attorney's fees to Cook is REVERSED; and we instruct the court to enter an award of attorney's fees which excludes fees for work not in aid of execution and which represents a partial rather than a full fee, unless the court finds bad faith or vexatious conduct;

8. The court may reconsider the question of imposing sanctions on News' counsel.