70058. BROWN v. ASSOCIATES FINANCIAL SERVICES CORPORATION.
(333 SE2d 888)

SOGNIER, Judge.

Associates Financial Services Corporation (Associates) filed a writ of possession on Clifford Brown's automobile alleging that Brown was in default and that Associates had accelerated the entire balance of $1,790.25. Brown answered and counterclaimed denying the default and alleging that the contract violated the Industrial Loan Act by contracting for and charging unlawful amounts. Brown sought a statutory penalty of $2,308.28 for the violation against the delinquency claimed to be due. The trial court granted Associates' motion for summary judgment, awarded it a writ of possession, and dismissed Brown's counterclaim. Brown appeals from the judgment in favor of Associates and the dismissal of his counterclaim.

" ' "It is not only the right but the duty of a reviewing or appellate court to raise the question of its jurisdiction in all cases in which there may be any doubt as to the existence of such jurisdiction." [Cit.]' [Cit.]" *Atlantic-Canadian Corp. v. Hammer &c. Assoc.*, 167 Ga. App. 257 (1) (306 SE2d 22) (1983). The question of the Court of Appeals' jurisdiction over this case arises from the interpretation to be given OCGA § 5-6-35 (a) (6) which provides that an application for discretionary review by this court must be made in "[a]ppeals in all actions for damages in which the judgment is $2,500.00 or less."

We hold that OCGA § 5-6-35 (a) (6) requires that an application for discretionary review be filed when the amount placed in controversy by the claimant (plaintiff, counterclaimant or cross-claimant) is $2,500 or less. In so holding, we are mindful of the duty of the courts " 'to look diligently for the intention of the General Assembly keeping in view at all times the old law, the evil, and the remedy. [Cits.]' [Cit.]" *Intl. Indem. Co. v. Bakco Acceptance*, 172 Ga. App. 28, 30 (1)

(322 SE2d 78) (1984). The intention of the General Assembly, in enacting the original statute, Ga. L. 1979, p. 619 (formerly Code Ann. § 6-701.1; now OCGA § 5-6-35), was to alleviate the pressure of the massive caseload on the appellate courts by giving the appellate courts the discretion not to entertain appeals in certain judgments and orders from various administrative agencies and in domestic relations cases. *C & S Nat. Bank v. Rayle*, 246 Ga. 727, 729-730 (273 SE2d 139) (1980). OCGA § 5-6-35 was amended, effective July 1, 1984, in order to set forth additional classes of cases in which an application for appeal is required. *Fontaine v. Stuhler*, 172 Ga. App. 584 (323 SE2d 881) (1984). It is clear that the General Assembly in enacting section (a) (6) sought to further the purpose of the original statute and relieve the caseload pressure on the appellate courts by eliminating direct appeals to the appellate courts from cases where the amount of money involved was so relatively insubstantial that, unless an important issue of law was concerned, the appeal would constitute a drain on the limited time and resources of the appellate courts. Thus, to give effect to this purpose, the General Assembly determined that $2,500 is the amount against which the relative importance of a case would be measured.

However, not all judgments involve monetary sums against which the $2,500 "yardstick" in OCGA § 5-6-35 (a) (6) can be measured. The only construction which gives effect to the General Assembly's intention of eliminating direct appeals in cases which involve $2,500 or less is our holding which construes section (a) (6) as measuring the $2,500 statutory sum against the amount placed in controversy by the party seeking damages.

The dissenting opinion asserts that OCGA § 5-6-35 (a) (6) is inapplicable where a claimant recovers "nothing," i.e., the judgment is in favor of the defending party, and thus a direct appeal to this court is appropriate in a case such as the one sub judice where the appellant was unsuccessful on his counterclaim. The dissenting opinion is premised on the idea that a judgment in favor of a defending party is not a money judgment since it is rendered in "no" amount, and thus the General Assembly could not have intended for OCGA § 5-6-35 (a) (6) to apply because there is no sum against which the $2,500 yardstick could be measured. (However, the dissent does not address the situation where an unsuccessful claimant recovers "nothing" but nevertheless the judgment is rendered in a monetary amount because costs, assessed against the claimant, are included in the judgment. See OCGA § 9-15-11.) The diametrically opposite argument was posed by some litigants who urged that OCGA § 5-6-35 (a) (6) be construed as requiring an application for discretionary review be filed in *every* case when the judgment was in favor of the defending party because the appeal is from a judgment for "$0.00" amount, which is a

monetary amount always less than $2,500. Both of these constructions of OCGA § 5-6-35 (a) (6) are unacceptable.

" 'It is the duty of the court to consider the results and consequences of any proposed construction and not so construe a statute as will result in unreasonable or absurd consequences not contemplated by the legislature.' [Cits.]" *Barton v. Atkinson*, 228 Ga. 733, 739 (187 SE2d 835) (1972). The dissent's construction of OCGA § 5-6-35 (a) (6) would allow direct appeals where the judgment is in favor of the defending party but would mandate the application of the $2,500 yardstick where the judgment is in favor of the claimant. The practical result of this construction is that only defendants would have to concern themselves with the application of the $2,500 statutory sum. The litigants' proposed construction, on the other hand, while applying the $2,500 yardstick in all judgments in favor of claimants, would require all claimants appealing from judgments in favor of defending parties to apply for discretionary review regardless of the amount placed in controversy by the claimant.

"[W]here a law is susceptible of more than one construction, it must be given that construction which is most equitable and just. [Cit.]" *Ford Motor Co. v. Abercrombie*, 207 Ga. 464, 468 (62 SE2d 209) (1950). There is no indication in the legislative history of OCGA § 5-6-35 (a) (6) that the General Assembly intended or proposed to discriminate in favor of any one class of litigant. Under our interpretation of OCGA § 5-6-35 (a) (6), no one class of litigant is discriminated against because it is irrelevant whether the appealing party is the defendant, plaintiff, cross-claimant or counterclaimant. Rather, the party need only look to the record in the case and where the record reveals that the amount in controversy is in excess of $2,500, no application for discretionary review need be filed. Our construction of OCGA § 5-6-35 (a) (6) thus effectuates the legislative intent and purpose of the General Assembly in enacting OCGA § 5-6-35 (a) (6) with the most equitable and just results.

Therefore, because the record in the case sub judice reveals that neither appellee's claim of $1,790.25 nor appellant's counterclaim for $2,308.28 involve amounts in controversy in excess of $2,500, appellant's appeal is dismissed for failure to apply to this court for discretionary review pursuant to OCGA § 5-6-35 (a) (6).

*Appeal dismissed. Banke, C. J., Birdsong, P. J., and Carley, J., concur. McMurray, P. J., and Benham, J., concur in the judgment only. Deen, P. J., Pope, and Beasley, JJ., dissent.*

DEEN, Presiding Judge, dissenting.

1. I must dissent from the majority opinion dismissing this appeal.

A type of non-evolving constancy, permanency, and stability is

needed in the law, particularly where statutory interpretations are involved distinguishing between direct and discretionary appeals. "The location of such issues on the legal landscape assuages an anxiety over instability and reaffirms the illusion that jurisprudential order is marked by a satisfying security of constancy. In this fashion, the debilitating awkwardness of transition is countered, and the notion is perpetuated that permanency is patently possible." Sentell, "Claims Against Counties: The Difference a Year Makes." 36 Mer. L. Rev 1, 42-43 (1984).

The majority opinion in the instant case makes a very practical, profound, pragmatic, and positive approach, yet, in my opinion, what is suggested does not appear to be within the scope and intent of the language and wording of the statute. It proposes, as the test to be used in each case, that one must ascertain whether the "amount placed in controversy" is greater than $2,500, or that amount or less, whereas the statute appears to clearly require only identifying whether or not a money judgment of $2,500 or less exists in a particular case.

Four objections are raised against the majority's interpretation:

(a) It does not follow the language of the statute. If the General Assembly had meant "amount pleaded or placed in controversy," they would have used that term instead of "judgment."

(b) If a claim originally is in the amount of a million dollars and a jury verdict and judgment of the court is rendered in the amount of only $10, the majority is saying there is no money judgment in the amount of $2,500 or less because there is an "amount pleaded or placed in controversy" of over $2,500.

(c) Artful, astute, and able attorneys could always from the inception allege damages in excess of $2,500 and thereby sidestep, subvert, and avoid the use of discretionary appeals, which would be contrary to the intent of the legislature and would lead to absurd and contradictory consequences not envisioned by the lawmakers.

(d) Concern is expressed that the writer's interpretation would result in discrimination favoring direct appeals when the judgment is on the side of the defendant, but mandating discretionary review procedures when plaintiff obtains a judgment of $2,500 or less. However, it must be remembered that about half the time when plaintiff receives a judgment of $1, $10, $100, $1,000, or other sums of $2,500 or less, this is in actuality a victory or judgment favorable to defendant. The proof of this statement is that plaintiffs appeal from these smaller judgments in their favor about as many times as do defendants. Substance rules over nomenclature. The rule and sword must cut both ways. It does not necessarily discriminate between plaintiff and defendant, but if so, the rule of *de minimis non curat lex* is applicable.

2. Since the writer apparently is all alone in the substantive aspects of this case, it is appropriate to restate the words of Judge Clark: " 'Everybody is out of step but Johnny!' That aphorism appears applicable to this personal plaint wherein this writer as the sole dissenter is compelled to express his views. In doing so I am guided by the philosophy inherent in those words of the Latin poet Horace: 'The man who is tenacious of purpose in a rightful cause is not shaken from his firm resolve.' Perhaps personal prejudice prompts private predilections." *City of Jonesboro v. Clayton County,* 131 Ga. App. 218, 221 (205 SE2d 475) (1974).

In his first enumeration of error Brown contends that the trial court erred in granting Associates' motion for summary judgment, granting the writ of possession and dismissing his counterclaim.

The record indicates that Brown executed a loan contract security agreement and a loan disclosure statement for $4,150. The loan was repayable in 36 monthly installments of $115 each. Appellee charged Brown premiums for credit life insurance ($207.47) and credit accident and health insurance ($142.38). These premiums were financed as part of the loan and included in the total to be repaid. The loan was secured by Brown's automobile, a 1979 Oldsmobile Cutlass. For approximately 18 months Brown made payments on the loan. When he became disabled from an on-the-job injury, he presented a statement of disability to Associates to claim benefits under his credit accident and health insurance, but appellee's manager denied the claim on the ground that Brown had cancelled this insurance and received a refund of the premium. Brown made several requests that the company honor his insurance policy, but was unsuccessful. At some point, Associates apparently gave him a copy of a cancelled check made payable to him and dated the day after the contract was signed which bears his purported endorsement. In his affidavit opposing the motion for summary judgment, Brown denied cancelling the insurance and receiving the refund. (He claims he attached a copy of this photocopy to Associates' interrogatories as requested by plaintiff.) This dispute was never resolved and Associates attempted to repossess the automobile for default in Brown's payments. When Brown refused to release the automobile and demanded that the insurance agreement be honored, appellee refused and eventually filed a writ of possession to the automobile. Brown answered denying the default, and counterclaimed, contending that the contract violated the Industrial Loan Act, OCGA §§ 7-3-14, 7-3-15, by contracting for and charging unlawful amounts; and claimed he was entitled to set off the statutory penalty for violation of the Act against the delinquency which plaintiff claimed was due.

The loan contract and financing statement both contain an acceleration clause which provides: "If any payment is not paid when due,

the *entire unpaid amount* of this indebtedness may at the option of the lender become due and payable without demand or notice and if this should occur, borrowers shall receive a pro rata rebate of *interest* and of the *monthly maintenance charge . . .*" (Emphasis supplied.) The record shows that the accelerated balance was computed by deducting from the gross balance a pro rata portion of the precomputed interest charge, a portion of the maintenance charge and a portion of the credit life insurance premium as determined by the Rule of 78's. As set forth above, it is apparent that the contract does not provide for a rebate of insurance charges upon acceleration of the note, and the answers to interrogatories are silent as to the refund of the accident and health insurance premium. The affidavit of Associates' manager does not mention the alleged cancellation and refund. A copy of the loan contract attached to the affidavit bears the notation "cancelled" beside the premium amount for the accident and health insurance.

The note in question shows on its face that appellee sought to contract for the acceleration of life insurance and accident and health insurance premiums in violation of the provisions of the Industrial Loan Act. See *G.A.C. Fin. Corp. v. Hardy*, 232 Ga. 632 (208 SE2d 453) (1974); *Sun Fin. Co. v. Lawrimore*, 232 Ga. 637 (208 SE2d 454) (1974). This type of acceleration clause was expressly condemned in *Clyde v. Liberty Loan Corp.*, 249 Ga. 78, 79 (287 SE2d 551) (1982), and the court held that such a contract was null and void. See also *Scroggins v. Whitfield Fin. Co.*, 152 Ga. App. 8 (262 SE2d 168) (1979), wherein this court reversed the grant of summary judgment in favor of the finance company because it failed to prove that in accelerating it made appropriate rebates for unearned life insurance premiums, maintenance fees or interest.

OCGA § 7-3-29 (f), however, provides for a good faith defense if "a contract is made in good faith in conformity with an interpretation of this chapter by the appellate courts of this state or in a rule or regulation officially promulgated by the commissioner after public hearings. . . ." In the court below, appellee argued that it was entitled to the good faith defense because it submitted its loan forms to the Comptroller General and they were approved by him. This argument was rejected in *Aetna Fin. Co. v. Brown*, 172 Ga. App. 537 (323 SE2d 720) (1984).

In its brief, appellee argues that OCGA § 7-3-29 (c) provides that there is no liability if any error is corrected within fifteen days after discovery of the error, and claims it did not violate the Code and incurs no penalty with reference to the credit accident and health insurance. The logic of this argument escapes me. If the lender discovered an error in the acceleration clause and refunded the credit accident and health insurance, why did it not also refund the premium for the

credit life insurance at the same time? This argument is also illogical in the face of appellee's assertion that Brown requested that the credit accident and health insurance be cancelled.

In view of the holding in *Clyde v. Liberty Loan Corp.*, supra, and its reliance upon *Scroggins v. Whitfield Fin. Co.*, supra, I believe that the loan contract was null and void and that the trial court erred in granting Associates' motion for summary judgment, granting the writ of possession and dismissing Brown's counterclaim.

3. I also think that the trial court further erred in ordering payment into the registry of the court of the past due installments of $1,035, and in granting Associates a preliminary writ of possession when Brown failed to do so.

OCGA § 44-14-234 (1) (A) and (B) permits a debtor to retain possession of the secured property pending a final decision if he pays into the registry of the court "(A) [a]ll past due amounts which are admitted to be due and for which there are no allegations of defenses or claims which, if proven, would offset said amounts alleged past due; and (B) [a]ll amounts of unaccelerated payments which become due after the issuance of the summons as said amounts . . . become due."

As Associates accelerated the entire balance of $1,790.25, there were no unaccelerated payments to become due under subsection B. As for the applicability of subsection A, Brown's answer denied any past due amounts, raised the defense of violation of the Industrial Loan Act and counterclaimed for a statutory penalty of $2,308.28. He demanded that the penalty be set off against the amount claimed by Associates. As the claimed penalty exceeds the alleged debt, subsection A is likewise not applicable. Accordingly I believe that the trial court erred in granting Associates a preliminary writ of possession. *Coppage v. Mellon Bank*, 142 Ga. App. 12, 13 (234 SE2d 824) (1977). See also *Smalls v. Harrison*, 150 Ga. App. 473, 474 (258 SE2d 227) (1979); *Foskey v. Bank of Alapaha*, 147 Ga. App. 541 (249 SE2d 346) (1978). I would reverse the judgment of the trial court for the reasons set forth.

BEASLEY, Judge, dissenting.

The majority is correct in that the first question is whether we have jurisdiction to consider this direct appeal or whether appellant followed the wrong procedure and should have filed an application for a discretionary appeal.

OCGA § 5-6-35 relegates to the category of "discretionary appeals" certain classes of cases. It was amended several times in 1984 to add more types of cases in which the appellate courts could exercise their judgment in granting full appeal·instead of being required to provide it.

Subsection (a) (6) added the following to the classes of cases for discretionary treatment: "Appeals in all actions for damages in which the judgment is $2500 or less." First, it is apparent that subsection (6) relates to cases in which there is a judgment for money in the amount of $2,500 or less. Second, it refers to actions for damages, which of course can be brought by complainants, counterclaimants or cross-claimants. Third, it refers to *judgments*, not to "amounts in controversy."

The legislature could have more clearly articulated its intent by adding the words "for a claimant" after "judgment" so that this exception to the right of direct appeal would read: "Appeals in all actions for damages in which the judgment for a claimant is $2500.00 or less; . . ." That it did not do so does not diminish the import of the language used, in context. As to the amount of the judgment being the critical factor, I would not construe this to mean "amount in controversy," as the word used is "judgment" and we are dealing with what *is* and not with what we think it ought to be; that is a matter of legislative policy, when it has spoken.

We all agree that the obvious objective, reading the 1984 amendments and discerning their purpose, was to expand the category of discretionary versus mandatory appeal cases for the appellate courts, in a manner which already existed by that statute. What is carved out generally involve areas in which there is not likely to be a substantial miscarriage of justice if the losing party has a right to only a preliminary review by the appellate court rather than a full-blown appeal.

Such treatment is afforded to cases where judgment for a claimant, rendered by a judge or a jury, is $2,500 or less, regardless of the amount sought. It is too small an amount, says the law, for the party who challenges it (be it plaintiff or defendant) to be given the *right* to appeal. The judicial resources, limited especially in time as they are, should not be *required* to review such small judgments. Where, after full judicial determination below, the dispute has been boiled down to a requirement for one party to pay another $2,500 or less, that amount is too small to *mandatorily* require full review. Its monetary *value* to both sides, i.e., the one who has prevailed and the one who must pay, is not worth the cost of full appellate resources of time, energy, and money unless the court in its discretion deems it warranted. The category speaks to the amount being fought over at the appellate level, not to the amount in issue at the trial level. Discretionary appeal is sufficient because the trial level has already examined the total amount in controversy, i.e., the amount claimed, and adjudged the claim worth $2,500 (or less). The majority has gone too far; the statute directs attention to the final result below, the judgment, not to the amount the claimant started out demanding. An example would be a plaintiff who claimed $200,000 including punitive

damages and won $2,000. Liability was established and the question of damages resolved. The legislature says to defendant: you are going to have to pay, but it is such a relatively small amount that if you appeal, the court will be permitted to examine your application first before devoting the full resources of the court to it. And to the plaintiff who wants to appeal that amount, it says: you have already had one full consideration of the amount of damages and an opportunity to prove the amount of your claim as being more than you received in judgment. So again, the court may first consider your application.

It may be that the legislature so provided because the "amount in controversy" criterion is an easy target for abuse: a party could just claim more than $2,500 in order to assure a direct appeal, thus rendering the $2,500 category customer-less.

If this category should be "amount in controversy," that is a policy question for the legislature, not for the court when the legislature has clearly pegged it to "judgment."

The plain language shows the intent of the legislature to be to restrict what otherwise would be a right of direct appeal, by requiring in this category an application for a discretionary appeal for those cases where the judgment is for a claimant and is in the amount of $2,500 or a lesser amount of money. Accordingly, as appellant recovered zero on his counterclaim, i.e., suffered a judgment for counter-defendant and against him, he is entitled to a direct appeal.

I do agree with the majority that the legislature did not intend to relegate to discretionary appeal status all the cases in which the verdict was for defendant on the basis that it is a judgment for "less" than $2,500. If such a construction were given, then regardless of the nature of the plaintiff's claim, the amount of injury allegedly sustained, the effect of loss on plaintiff or his business, the fact that the judge or jury found *against* him would render the appealability of the decision only to discretionary status. If the legislature meant to go *that* far in narrowing the types of cases which traditionally had enjoyed a right to appeal, its use of language was all too obtuse.

A defendant's verdict, that is, a zero judgment, means plaintiff is out of court all together. That is left to direct appeal entitlement, and rightly so, because it goes to the heart of the plaintiff's case; his claim has been declared remedy-less, either because of some legal deficiency such as the procedure he followed or because of perceived lack of merit or because of some legal impediment. In such cases, as I understand the statute, direct appeal would lie regardless of the amount claimed. This is not without good reason, because the claimant has brought a claim to court and has obtained no relief. The focus there is not on how much he was seeking, but whether for some reason he is not entitled to any amount whatsoever.

I am authorized to state that Judge Pope joins in this dissent.

## On Motion for Rehearing.

On motion for rehearing, appellant calls to our attention that he had filed both a direct appeal and a discretionary appeal with this court and that earlier this court granted appellant's application for discretionary review. The trial court forwarded to us the direct appeal. Due to an administrative error by the clerk of the trial court, the discretionary appeal was only transmitted to us after the decision was rendered in the instant case, we having by then deemed the discretionary appeal abandoned. Appellant's discretionary appeal has now been dismissed as improvidently granted and this decision on appellant's direct appeal remains unchanged. In order to more easily understand the apparent paradox in this court's handling of appellant's two methods of appeal, we call attention to the fact that generally discretionary appeals will be granted by this court only when reversible error appears to exist or when the establishment of a precedent is desirable. See Rule 25 of the Rules of The Supreme Court.

*Motion for rehearing denied.*

DECIDED JULY 15, 1985 —
REHEARING DENIED JULY 30, 1985 — 

*W. E. Lockette, Johnnie M. Graham, Phyllis Holmen, Paul Kauffman, John L. Cromartie, Jr.*, for appellant.

*T. Lee Bishop, Jr.*, for appellee.