75540, 75541. WHITLEY v. BANK SOUTH, N. A.; and vice versa.
(366 SE2d 182)

BANKE, Presiding Judge.

Bank South, N. A., sued Chester A. Whitley and his daughter, Piper Leigh Balius, to recover a deficiency in the principal amount of $1,752.67 allegedly owed by them on an automobile retail installment contract. Mr. Whitley had co-signed the contract with his daughter in order to enable her to obtain financing for the purchase of the automobile in question, which the bank subsequently repossessed. In a second count of the complaint, the bank also sought to recover an alleged "Mastercard Account" indebtedness in the amount of $1,805.67. Mr. Whitley denied being indebted to the bank on either claim and counterclaimed to recover damages for "abusive litigation."

The complaint was filed on August 4, 1986. A default judgment was entered against Ms. Balius on October 23, 1986, based on her failure to file defensive pleadings in the case. On May 21, 1987, the bank amended its complaint to clarify that its claim on the Mastercard account was asserted only against Ms. Balius and not against Mr.

Whitley. Approximately two weeks later, the case proceeded to trial.

At the conclusion of the bank's evidence, the trial court directed a verdict against the bank with respect to its claim against Whitley for the balance due on the automobile loan, based on its failure to send him a deficiency notice within ten days after the repossession of the vehicle, in compliance with Section 7 of the Motor Vehicle Sales Finance Act. See OCGA § 10-1-36; Ga. L. 1967, pp. 674, 682, § 7. However, the judge declined to submit Whitley's claim to the jury as well, reasoning that because Whitley had co-signed the retail installment contract and because the loan had not been paid in full, substantial justification had been established by the bank as a matter of law for naming him as a defendant. Having thus, in effect, granted a directed verdict in the bank's favor on Whitley's counterclaim without having heard Whitley's evidence in support thereof, the court, after dismissing the jury, thereupon allowed him to perfect the record by presenting such evidence.

Whitley filed this appeal from the judgment entered against him on his counterclaim, and the bank cross-appealed, enumerating as error the judgment entered in his favor on the complaint. Notwithstanding its cross-appeal, the bank has moved to dismiss the main appeal based on Whitley's failure to follow the discretionary appeal procedures applicable to appeals from judgments for $2,500 or less. See OCGA § 5-6-35 (a) (6). *Held*:

1. The bank's motion to dismiss the appeal is denied. The Supreme Court has held that OCGA § 5-6-35 (a) (6) is applicable only where the appellant is seeking to appeal a money judgment for an amount ranging from 1¢ through $2,500, and not, as in this case, where the appellant has sought a money judgment but has obtained no recovery whatever. See *City of Brunswick v. Todd*, 255 Ga. 448 (339 SE2d 589) (1986). The bank's reliance on *Brown v. Assoc. Fin. Svcs. Corp.*, 175 Ga. App. 553 (333 SE2d 888) (1985), wherein this court held that the applicability of § 5-6-35 (a) (6) is determined by the amount placed in controversy by the pleadings, is misplaced for two reasons. First, and foremost, that holding was reversed by the Supreme Court on certiorari. See *Brown v. Assoc. Fin. Svcs. Corp.*, 255 Ga. 457 (339 SE2d 590) (1986). Second, the Court of Appeals decision in *Brown* would have no applicability to the present case even if it had not been overruled, since the amount which Whitley sought to recover in his counterclaim was not limited to $2,500 or less.

2. Addressing the trial court's rulings in this case in chronological order, we shall first consider the enumerations of error raised by the bank in its cross-appeal. Initially, the bank contends that the trial court erred in granting a motion by Whitley to open a default created by his failure to file his responsive pleadings in a timely manner.

After the original complaint was filed, the parties entered into a

stipulation extending the time for Whitley "to move, answer, or otherwise respond to plaintiff's complaint . . . to and through October 17, 1986." On October 17, 1986, which fell on a Friday, Whitley mailed his answer and counterclaim to the clerk for filing and also mailed a service copy to the bank's counsel. As a result, service of the answer and counterclaim was legally effected on October 17, 1986 (see OCGA § 9-11-5 (b)), but the filing of the responsive pleadings did not occur until the next business day, i.e., Monday, October 20, 1986. Some seven months later, on May 22, 1987, the bank moved for the entry of a default judgment against Whitley based on his failure to file his answer on or before October 17, 1986. Whitley thereupon filed a motion to open the default pursuant to OCGA § 9-11-55 (b). The bank contends on appeal that the trial court erred in granting this motion and in declining to enter a default judgment because a "proper case" was not established for the opening of the default within the contemplation of OCGA § 9-11-55 (b). We find this contention to be wholly lacking in merit.

"The rule permitting opening of default is remedial in nature and should be liberally applied (cit), for default judgment is a drastic sanction that should be invoked only in extreme situations. (Cits.) Whenever possible cases should be decided on their merits for default judgment is not favored in law. (Cits.) Our courts have expressed a policy of liberality toward motions for relief from entry of default and have resolved doubts in favor of the party seeking relief so that the case can be heard on its merits. (Cits.) Generally, a default should be set aside where the defendant acts with reasonable promptness and alleges a meritorious defense. (Cit.)" *Ewing v. Johnston*, 175 Ga. App. 760, 764 (334 SE2d 703) (1985).

Where, as in the present case, the defendant's responsive pleadings were timely served but filed a day late; the plaintiff, notwithstanding the timely service of the responsive pleadings, did not assert the default within the 15-day period during which it could have been opened as a matter of right pursuant to OCGA § 9-11-55 (a), but waited instead almost until the eve of trial to do so; the defense asserted in the answer was not only viable but was ultimately determined to warrant the direction of a verdict against the plaintiff; and it has not been suggested how the plaintiff's ability to present its case could have been prejudiced by the trial court's action, we cannot say that the trial court abused its discretion in permitting the default to be opened pursuant to the "proper case" theory. See OCGA § 9-11-55 (b). Accord *Muscogee Realty Dev. Corp. v. Jefferson Co.*, 252 Ga. 400 (314 SE2d 199) (1984). See also *Copeland v. Carter*, 247 Ga. 542 (277 SE2d 500) (1981).

3. We hold that the court also acted properly in directing a verdict against the bank with respect to its claim against Whitley for the

balance alleged to be owing on the automobile loan. Although the bank forwarded separate deficiency notices to Whitley and his daughter by certified mail within ten days after the repossession of the vehicle, it mailed both such notices to the daughter's address, even through Whitley's address was the one shown on the contract. Thus, Whitley's notice, at least, was not in compliance with Section 7 of the Motor Vehicle Sales Finance Act, which provides, in pertinent part, as follows: "When any motor vehicle has been repossessed after default in accordance with Part 5 of Article 9 of Title 11, the seller or holder shall not be entitled to recover a deficiency against the buyer unless within ten days after the repossession he forwards by registered or certified mail *to the address of the buyer shown on the contract or later designated by the buyer* a notice of the seller's or holder's intention to pursue a deficiency claim against the buyer." OCGA § 10-1-36. (Emphasis supplied.)

At the time the retail installment contract was executed, the daughter had been residing at Whitley's home, but, prior to the repossession, she had moved into her own apartment. The bank maintains that it was justified in sending Whitley's deficiency notice to the daughter's new address because an investigator it had hired to locate and repossess the vehicle had reported that location as being "the customer's home address" and because it was from that address that the vehicle was repossessed. Contending that the mailing of Whitley's deficiency notice to his daughter's address constituted "reasonable notification" to him under these circumstances, and further contending that the "reasonable notification" requirement set forth in the U.C.C. provision governing the rights of secured lenders to dispose of collateral after default (OCGA § 11-9-504 (3)) should prevail over the more specific notification requirements set forth in OCGA § 10-1-36, the bank argues that its failure to send Whitley's deficiency notice to his home address should not result in the defeat of its claim against him for a deficiency judgment.

We reject both prongs of this argument. In the first place, OCGA § 10-1-36 specifically provides that it "is cumulative of Part 5 of Article 9 of Title 11 and provides cumulative additional rights and remedies which must be fulfilled before any deficiency claim will lie against a buyer. . . ." See *Doughty v. Assoc. Commercial Corp.*, 152 Ga. App. 575 (263 SE2d 493) (1979). Secondly, even if this case were governed by the "reasonable notification" requirement of the U.C.C. rather than by the more specific notification requirements set forth in OCGA § 10-1-36, we do not believe the facts known to the bank at the time the notices were sent can reasonably be characterized as warranting the conclusion that Whitley had left his home and moved into his daughter's apartment.

4. This brings us to the issue of whether the trial court erred in

granting what was tantamount to a directed verdict against Whitley on his abusive litigation counterclaim. In concluding as a matter of law that the counterclaim was not meritorious, the trial court reasoned that Whitley's signature on the contract established, as a matter of law, substantial justification for the bank's action in naming him as co-defendant in the action. However, the evidence presented by Whitley in support of his counterclaim revealed an added dimension to the dispute.

Whitley testified that at some point after the loan went into default, but before the automobile was repossessed, a Ms. Hoover had telephoned him from the bank to advise him that his daughter was three payments behind on the car loan. Whitley testified that he responded to this information by offering to pay off the loan immediately but that Ms. Hoover informed him he would also have to pay off a $1,800 Mastercard indebtedness owed by his daughter, or else "they would file a form D — I forget the number on it [—] and ruin my credit for ten years." Whitley testified that he thereupon repeated his offer to pay off the car loan but refused to accept responsibility for the Mastercard indebtedness "because I did not know about it and I did not sign for it. . . ." Whitley stated that Ms. Hoover again rejected this offer, insisting that both loans be paid off that afternoon.

Testifying on behalf of the bank, Ms. Hoover denied that she had threatened to ruin Mr. Whitley's credit for ten years, stating that she would never threaten to damage a person's credit rating in an attempt to collect a loan, though conceding that she might, as a courtesy, warn the person that "[i]f the account would go to recovery, it would be reported to their credit bureau." It was shown, however, that in previous deposition testimony Ms. Hoover had conceded the possibility that she might have made all of the statements attributed to her by Whitley.

In the second count of its original complaint, i.e., the count seeking to recover the balance allegedly due on the Mastercard account, the bank had incorporated by reference an earlier paragraph of the complaint alleging that Ms. Balius was subject to the jurisdiction of the court and had then simply alleged as follows: "Defendant owes plaintiff $1,805.67 on an account, the same being Mastercard account." The bank contends on appeal that it was unambiguously clear from this language that the claim on the Mastercard account was asserted solely against Ms. Balius and not against Mr. Whitley. However, the bank's position in this regard is at odds with its own conduct in amending the complaint on the eve of trial to clarify that only Ms. Balius was sought to be held liable on Count 2. Moreover, the bank officer who had authorized the filing of the suit testified in her deposition that she, at least, interpreted the original complaint as seeking a recovery against both defendants on both counts. (This witness fur-

ther acknowledged during the course of her deposition that the bank had not in fact had any reason to believe that Whitley had moved from the address set forth on the retail installment contract at the time it mailed the deficiency notices.) Clearly, Whitley had every reason to believe, under the circumstances, that he was being sued for the Mastercard indebtedness as well as for the deficiency on the automobile loan, which he had previously offered to pay in full.

We believe a jury could reasonably infer from the foregoing evidence that, by pursuing the present action against Whitley, the bank had sought to harass or intimidate him into paying one or more debts for which he had no arguable legal responsibility. A recovery of damages for "substantially frivolous, substantially groundless, or substantially vexatious" litigation would clearly be authorized under such circumstances pursuant to *Yost v. Torok*, 256 Ga. 92 (344 SE2d 414) (1986), as well as OCGA § 9-15-14. We consequently hold that the trial court erred in refusing to submit the abusive litigation counterclaim to the jury.

*Judgment affirmed in Case No. 75541. Judgment reversed in Case No. 75540. Carley and Benham, JJ., concur.*

DECIDED FEBRUARY 3, 1988 —
REHEARING DENIED FEBRUARY 22, 1988 — 

*Walter H. Beckham III*, for appellant.
*Susan L. Howick*, for appellee.