A96A2191. NATIONAL AMERICAN INSURANCE COMPANY, INC. et al. v. THORNTON et al.
(485 SE2d 530)

BLACKBURN, Judge.

National American Insurance Company, Inc. (National), Fast Freight, Inc., and J. C. Mobley sued Michael Thornton and Michael Thornton, P.C. (Thornton) for legal malpractice. Thornton moved for summary judgment which the trial court granted. National appeals from that ruling.

"The standard of review of the trial court's grant of defendant['s] motion for summary judgment is a de novo review of the evidence to determine whether there is any genuine issue of material fact as to the elements required to establish the causes of action stated by plaintiff in [its] complaint. The standard for granting summary judgment is that the moving party must demonstrate that there is no genuine issue of material fact, and that undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." (Citation omitted.) *Artlip v. Queler*, 220 Ga. App. 775, 776 (470 SE2d 260) (1996). See also *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991); OCGA § 9-11-56 (c).

Based on the above standards, the record reflects that the alleged legal malpractice which forms the basis of this case arose out of a wrongful death action which Thornton was retained to defend.

The wrongful death action was brought after Mary Atkinson, a pedestrian, was struck and killed by a truck driven by Mobley and owned by Fast Freight. National insured both Mobley and Fast Freight. National retained Thornton to represent both Fast Freight and Mobley, and retained another firm to represent itself. It was agreed, however, that Thornton would try the case on behalf of National as well as Fast Freight and Mobley. According to National and its attorney, the case was one of nonliability or minimal damages, as Mary Atkinson had allegedly failed to yield the right-of-way to vehicular traffic.

The wrongful death action was placed in position twelve on Judge Thompson's two-week trial calendar in the State Court of Fulton County, which was scheduled to commence on Monday, October 4. Thornton had notice of this calendar, and it provided that there would be no calendar call, that cases would not necessarily be called in the order in which they were published, and that all cases would remain on a two-hour notice. As of the Friday before the commencement of the two-week calendar, Thornton knew the case was "on call" for trial the following week.

As a result of conversations with the calendar clerk, on Tuesday, October 5, Thornton informed National's claims supervisor, Gulley, that the case was not likely to be reached for trial that week. Later that same day, Gulley received notice from National's own attorney, Noeltner, that the case was set for trial, and that it was scheduled to commence at 9:00 a.m. the following morning, October 6. Gulley then telephoned Thornton in an attempt to relay this information, but when he could not reach Thornton, he left a message on Thornton's answering machine. This same day, October 5, someone from Judge Thompson's staff left a message on Thornton's office answering machine after 5:00 p.m. directing him to report for trial the following morning at 9:00 a.m.

Concerned that he had not reached Thornton, Gulley called again at 8:45 a.m. EST on October 6 to tell Thornton the case had been scheduled for trial. Not receiving any answer, Gulley left another message. At 9:15 a.m. on October 6, Judge Thompson's office called Thornton's office for a second time, and again received no answer. Thornton having failed to report for trial, upon motion, the court struck his clients' answer. A hearing on damages was held immediately thereafter, and the court entered a default judgment in excess of $400,000 against National, Fast Freight, and Mobley.

1. The plaintiffs contend that the trial court erred in finding, as a matter of law, that Thornton did not receive reasonable notice of the call of the wrongful death action for trial.

According to Thornton, he had no notice of trial until between 10:00 and 11:00 a.m. on October 6, when his secretary called him at a

deposition he was attending and informed him that the case had been called for trial. He claims he arrived at his office at approximately 7:30 a.m. on October 6 to prepare for a deposition, was aware of no messages on his answering machine directing him to report for trial at that time, and then left the office to attend the deposition at approximately 8:45 a.m. He also states that he had no staff present in the office on October 6 prior to 10:00 a.m. Our review of the record indicates conflicting representations by Thornton regarding what was on his answering machine on the morning of October 6, when he was alone in his office preparing for depositions. He averred in his January 10, 1996 affidavit that he was in fact present at his office between 7:30 a.m. and 8:45 a.m. On cross-examination at his deposition, he testified that when he arrived at the office at 7:30 a.m. on October 6, he checked, and *there were no messages on the answering machine*. In his brief in support of his motion to open the default judgment, Thornton represented that his secretary called him at the deposition at 11:00 a.m. on October 6, and advised him that "a message had been left by Judge Thompson's office *after* business hours with regard to the scheduling of the trial of this case."

In view of the fact that the after-hours message was on the answering machine when Thornton's secretary opened the office at 10:00 a.m., October 6, it necessarily follows that such message would have been present when Thornton checked the answering machine at 7:30 a.m. that same day. Also, Gulley's 6:00 p.m. message left on October 5 would have been on the answering machine when Thornton checked same the morning of October 6. Thornton's contradictions must be construed against him. See *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986).

We cannot say, as Thornton contends, that reasonable notice must consist of two *business* hours notice as a matter of law. Nowhere in the record does it even reflect the normal business hours of the subject court. In this case however, Judge Thompson's calendar simply specified two-hours notice, without reference to business hours. Uniform Superior Court Rule 8.1 provides that the assigned judge shall be solely responsible for scheduling actions for trial, and USCR 8.4 (B) simply provides that there be "reasonable notice to counsel." In this case, the specific instructions contained in the calendar controlled the conduct of the calendar and superseded the general provisions of USCR 8.4.

One of the issues in this case is whether or not Thornton received actual notice of the scheduling of the original case for trial in accordance with the published calendar instructions. We must view the evidence in this summary adjudication most favorably to National, and such evidence would permit a jury to conclude that Thornton did receive two hours notice of trial. The undisputed evi-

dence reflects that the case was not called for trial until 9:40 a.m., October 6. Therefore, this issue cannot be resolved on a motion for summary judgment, as genuine issues of material fact remain for jury resolution.

2. The plaintiffs further allege that the trial court erred in finding, as a matter of law, that the proximate cause of their damages was their settlement of the wrongful death action after entry of the default judgment, and not the actions of Thornton following the entry of the default judgment.

Thornton continued to represent the plaintiffs for approximately two months after the default, until his employment was terminated and a new attorney was hired. The plaintiffs ultimately settled the case for $275,000, and instituted the present malpractice action against Thornton. The issue in this enumeration is whether or not Thornton breached his duty to his clients *after the default judgment was entered* and before his employment was terminated, and whether the plaintiffs were injured by such breach, if any.

Thornton knew at approximately 11:00 a.m. on October 6, 1993, the day of trial, that his answer had been stricken and that the case was in default. Thornton was also aware that the trial court had indicated that it would be willing to set aside the default if Thornton had a good reason for not appearing.

While Thornton contends that he attempted to telephone the judge five times without success for several days beginning on October 6, he testified that he never sought an emergency hearing in this matter. Although default judgment was entered and filed October 6, 1993, Thornton took no action to check the court docket or otherwise determine the status of the case prior to filing an inappropriate motion to open default rather than a motion to set aside the judgment. He only became aware that a default judgment had been entered on October 6, 1993, when opposing counsel mailed him a copy of the judgment which he received on November 4, 1993, 29 days after judgment had been entered.

After receiving a copy of the judgment on November 4, Thornton filed a motion to set aside the default judgment. Nineteen minutes later, Thornton filed a notice of appeal to this Court. Thornton correctly argued to the trial court in his brief in support of his motion to open the default that default judgments are not favored in Georgia, and that the rules permitting the opening of defaults should be liberally applied. See *Ewing v. Johnston*, 175 Ga. App. 760, 764 (334 SE2d 703) (1985); *Whitley v. Bank South, N.A.*, 185 Ga. App. 896, 898 (2) (366 SE2d 182) (1988).

Thornton contends that this Court would have reversed the trial court had the appeal been pursued, rather than being settled by National after his termination. On appeal, all inferences and pre-

sumptions are in favor of the validity of a judgment. *Lofty v. Fuller*, 223 Ga. App. 95, 97 (477 SE2d 30) (1996). Under Thornton's argument, one must also assume that the trial court would have followed the law, and set aside the default judgment. The trial court would have been free to exercise its discretion in setting aside the default judgment and it would be free of the presumptions which would limit the appellate court in its action.

Parties are charged with the obligation to mitigate their damages and plaintiffs did just that when confronted with a default judgment in excess of $400,000, a limited time for appeal, and a lack of counsel familiar with the events which led to their predicament. Had the plaintiffs not settled their case and unsuccessfully appealed, it would certainly be argued that they had failed to mitigate their damages when they had the opportunity to do so.

Because genuine issues of material fact remain for the jury's determination with respect to Thornton's obligations as attorney, which did not end with the issuance of the default judgment, summary judgment was erroneously granted.

*Judgment reversed. Andrews, C. J., McMurray, P. J., Birdsong, P. J., Pope, P. J., Johnson, Smith and Ruffin, JJ., concur. Beasley, J., dissents.*

BEASLEY, Judge, dissenting.

I respectfully dissent.

1. In their first enumeration, plaintiffs contend that there is a question of fact in regard to whether Thornton received reasonable notice of the call of the underlying case for trial, so that summary judgment on this ground was error.

As amended in 1989, USCR 8.4 (B) provides that in actions other than the first ten actions on the published trial calendar, the parties may contact the calendar clerk to obtain permission to await the call of the action for trial upon reasonable notice to counsel. See *Green v. Green*, 263 Ga. 551, 552, n. 1 (437 SE2d 457) (1993); see also *Fulton v. State of Ga.*, 183 Ga. App. 570, 572 (359 SE2d 726) (1987) (applying USCR 8.4 prior to its 1989 amendment).

When the Atkinson case, which was in the number twelve position on the trial calendar, was called for trial at 9:00 a.m. on October 6, it was on two-hour notice. Counsel was thus entitled to receive actual notice of the trial two hours before it began. As acknowledged by plaintiffs, any call from the calendar clerk to Thornton was not made until after 5:00 p.m. on October 5. Thornton's testimony was not self-contradictory nor did it conflict with representations in his brief. Thornton testified in his affidavit that on the morning of October 6, he went to his office and checked his answering machine for messages, and the light was not blinking, indicating there were no

new messages. In his deposition, he testified that he checked his answering machine and there were no messages. In the brief in support of his motion to open the default, he stated that he did not notice any messages on the answering machine. In his deposition, Thornton testified that when he was informed by his secretary that the case had been called for trial that morning, he interrupted the deposition he was attending in order to telephone the judge's office and then terminated the deposition. It cannot reasonably be inferred that Thornton actually received the message from the clerk or Gulley and chose to ignore it.

Moreover, it could not reasonably be expected that counsel would actually receive the message from the clerk any sooner than the start of business hours on October 6, which was not two hours before the start of the trial. Without court rule defining "two hours notice" otherwise, it should be construed to mean two business hours, in keeping with the business day orientation of OCGA § 1-3-1 (d) (3). The message did not constitute such two-hour notice for trial at 9:00 a.m. and thus, as a matter of law, was not reasonable notice. The trial court did not err in so concluding. Declaring default at 9:30 a.m. was premature.

2. In their second enumeration, plaintiffs maintain that there is an issue of fact in regard to whether the proximate cause of their damages was the negligent acts and omissions of Thornton or their voluntary settlement of the underlying case. In this regard, they assert that Thornton was also negligent in not diligently seeking to set aside the default judgment and in filing a notice of appeal after filing the motion to set aside the judgment, thereby depriving the trial court of jurisdiction to act on the motion.

" 'In a legal malpractice action, the client has the burden of establishing three elements: (1) employment of the defendant attorney, (2) failure of the attorney to exercise ordinary care, skill and diligence, and (3) that such negligence was the proximate cause of damage to the plaintiff. (Cits.)' [Cits.]" *Huntington v. Fishman*, 212 Ga. App. 27, 29 (441 SE2d 444) (1994).

A motion to set aside under OCGA § 9-11-60 (d) does not extend the time for filing a notice of appeal, which must be filed within 30 days of the judgment, OCGA § 5-6-38 (a); *Austin v. Carter*, 248 Ga. 775, 776 (1) (285 SE2d 542) (1982). A motion to set aside may be filed within three years from entry of the judgment complained of. OCGA § 9-11-60 (f). Had it been denied, it would have been appealable in its own right under OCGA § 5-6-35. *N. C. Constr. Co. v. Action Mobil-platform*, 187 Ga. App. 507 (370 SE2d 800) (1988). In filing both, Thornton preserved the two options. His clients chose neither one.

Even if a jury could find Thornton negligent in not having the default judgment set aside immediately, the damages ultimately suf-

fered by his clients were not proximately caused by him in that they could have withdrawn the notice of appeal and pursued the motion and sought to set aside the default judgment rather than settling the case. See generally *Rogers v. Norvell*, 174 Ga. App. 453, 457 (2) (330 SE2d 392) (1985); compare *Nix v. Crews*, 200 Ga. App. 58 (1) (406 SE2d 566) (1991).

"The appellate courts of Georgia have held that failure of counsel . . . to receive notice of trial is such a defect as will authorize the setting aside of judgment under authority of OCGA § 9-11-60 (d). [Cit.]" *Beach's Constr. Co. v. Moss*, 168 Ga. App. 462, 463 (309 SE2d 382) (1983).

*Flint v. Hart*, 917 P2d 590 (Wash. App. 1996), relied on by plaintiffs, is distinguishable. In that case, the plaintiff entered into a settlement after obtaining an adjudication that his former law firm had made the omission charged to it, i.e., failed to retain a security interest in the intangible assets of a business which the plaintiff had sold. In this case, the plaintiffs settled the case in lieu of adjudicating the question of whether the default judgment should have been set aside.

Moreover, the present case, unlike *Flint*, involves litigation malpractice in which the existence of redressable harm depends on the outcome of the litigation. See *Coble v. Aronson*, 647 S2d 968 (Fla. App. 1994). In a case such as this, the plaintiff abandons its malpractice claim when it settles the underlying litigation while the appeal (or post-judgment motion) is pending, if the appeal or motion would, in all likelihood, have resulted in a reversal of the judgment. See *Segall v. Segall*, 632 S2d 76, 78 (1) (Fla. App. 1993). That is the case here.

DECIDED MARCH 21, 1997 —
RECONSIDERATION DENIED APRIL 3, 1997 — 

*Jones, Copeland, Lefkowitz & Greer, Taylor W. Jones, Rebecca A. Copeland*, for appellants.

*Shapiro, Fussell, Wedge, Smotherman & Martin, Robert B. Wedge, Mary L. Hahn*, for appellees.